ROBERT P. ROSENTHAL, Plaintiff-Appellee and Cross-Appellant, v. THE CITY OF CRYSTAL LAKE, Defendant-Appellant and Cross-Appellee.

Second District   No. 2—87—1026

Opinion filed June 29, 1988.

Kurnik, Cipolla, Stephenson, Barasha & O'Dell, of Arlington Heights (Cory P. O'Dell, of counsel), for appellant.

Zukowski, Rogers & Flood, of Crystal Lake (Andrew T. Freund, of counsel), for appellee.

JUSTICE DUNN delivered the opinion of the court:

A storm sewer system owned by defendant, the City of Crystal Lake, is buried on property owned by plaintiff, Robert P. Rosenthal. Plaintiff filed a four-count complaint against the city in the circuit court of McHenry County alleging causes of action in ejectment and trespass, as well as seeking an injunction and a writ of *mandamus* to compel the city to institute eminent domain proceedings. The trial court denied defendant's motion for summary judgment and granted plaintiff's cross-motion for summary judgment on all counts. Defendant appeals, arguing that plaintiff is not entitled to the relief granted because the sewer was already present when plaintiff acquired an interest in the property and because plaintiff has not shown that the sewer is wrongfully on his property. Defendant also contends that plaintiff's causes of action are barred by statutes of limitations. Plaintiff cross-appeals from an order which found plaintiff's request for fees and costs pursuant to section 7—122 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 7—122) to be premature. Although we remand to the trial court for modification of the order granting injunctive relief, we affirm in all other respects.

In July 1974, plaintiff acquired title to three lots in Crystal Lake under the terms of his father's will. Plaintiff's father had apparently acquired title to the property in the early 1930's. Plaintiff's complaint alleged that in 1985, he first became aware of defendant's storm sewer which bisects the lots in a north-south direction at a depth of 7½ feet. Upon learning of the sewer's presence, plaintiff demanded that defendant remove it, but defendant refused. Plaintiff then filed the instant complaint.

The storm sewer in question is part of a drainage district which, according to defendant, services thousands of residents and the city's business district. Defendant has maintained that the sewer was installed in 1927 with the consent of the property owner at the time. In support of this claim, defendant relies on newspaper articles describing the city park district's approval of a contract for construction of a storm sewer in the vicinity in that year, minutes of a July 1927 city council meeting, and deposition testimony by a current city employee. Defendant has produced no evidence, however, of an agreement with the record owner allowing placement of the sewer, no easement or right-of-way, and no evidence of condemnation proceedings pertaining to the property in question. Defendant also maintains that, according to the deposition testimony of plaintiff's son, plaintiff may have been aware of the sewer's presence as early as 1978.

The trial court initially granted summary judgment only on plaintiff's trespass, ejectment and injunction claims. Later, the court modified its order to grant summary judgment on plaintiff's claim for a writ of *mandamus*, and also ordered that plaintiff be awarded costs and fees incurred in the *mandamus* action. That order was subsequently modified, however, so as to deny for the present plaintiff's costs and fees.

Defendant first argues that the trial court erred in granting summary judgment on plaintiff's ejectment claim. Defendant's argument is twofold. First, defendant contends that ejectment is only proper when a defendant enters property after the plaintiff has acquired an interest in the property. Second, defendant argues that plaintiff here has not shown that the sewer is unlawfully on plaintiff's property.

■ For its first contention, defendant relies on the language of the Ejectment Act (Act) (Ill. Rev. Stat. 1985, ch. 110, par. 6—101 *et seq.*). Section 6—109 of the Act provides as follows:

"It shall be sufficient for the plaintiff to allege in the complaint that (on some day therein to be specified, and which shall be after his or her title accrued), he or she was possessed of the premises involved (describing them as hereinafter pro-

vided), and, being so possessed thereof, that the defendant *afterwards* (on some day to be stated) entered into such premises, and that he or she unlawfully withholds from the plaintiff the possession thereof, to his or her damage any nominal sum the plaintiff deems proper to state." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 110, par. 6—109.)

From this language, defendant concludes that the complained-of entry must have occurred after plaintiff's title accrued. Defendant also finds support for his argument in sections 6—137 and 6—138 of the Act (Ill. Rev. Stat. 1985, ch. 110, pars. 6—137, 6—138), which describe a plaintiff's damages as the amount of mesne profits received by a defendant since the time of entry.

Plaintiff responds that he need only demonstrate a valid subsisting interest in the property at the time the action commenced. Plaintiff also relies on the language of the Ejectment Act. Section 6—104 of the Act provides:

"No person shall recover in ejectment unless he or she has, *at the time of commencing the action*, a valid subsisting interest in the premises claimed, and a right to recover the same, or to recover the possession thereof, or of some share, interest or portion thereof, to be proved and established at the trial." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 110, par. 6—104.

A similar ownership requirement is set forth in section 6—119 of the Act:

"*It is not necessary for the plaintiff to prove an actual entry under title*, nor the actual receipt of any of the profits of the premises demanded; but it shall be sufficient for the plaintiff to prove a right to the possession of such premises *at the time of the commencement of the action*, as heir, legatee, purchaser or otherwise." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 110, par. 6—119.

Plaintiff contends that these sections of the Act are controlling and that defendant's reliance on section 6—109 is misplaced. In essence, plaintiff argues that if his predecessors in title could have maintained an ejectment action, that right passed with title to plaintiff if defendant remains on the property. Given section 6—119's admonition that it is not necessary for a plaintiff to prove actual entry under title, we agree that an ejectment action is proper even where entry is made prior to the plaintiff's acquisition of title.

Moreover, plaintiff's position is also supported by Illinois case law. In *Postal Telegraph-Cable Co. v. Eaton* (1897), 170 Ill. 513, a landowner brought an ejectment action seeking removal of the defend-

ant's telegraph poles from his property. Although the plaintiff there apparently did not have title to the property at the time the poles were placed, our supreme court held that ejectment was nevertheless proper, stating:

"It is, however, said that appellee purchased the land after the telegraph line was constructed, with full notice that the line had been constructed, and hence he took the land with the burden upon it. It is no doubt true that appellee purchased the land subject to all rights appellant possessed in it; but the trouble with appellant is, by taking possession without making compensation to the owner of the fee it acquired no rights as against such owner, and when appellee purchased he acquired all the rights in the land possessed by his grantor, and if his grantor was entitled to bring ejectment this right passed to appellee." (*Postal*, 170 Ill. at 520.)

Similarly, in *Mapes v. Vandalia R.R. Co.* (1909), 238 Ill. 142, the court specifically held that the owner was entitled to possession of his property unless the defendant proved a defense, and that it was not a defense to show that the defendant entered the premises before the plaintiff took title. (*Mapes*, 238 Ill. at 144; see also *Chicago & Iowa R.R. Co. v. Hopkins* (1878), 90 Ill. 316, 321 (purchaser could have maintained ejectment action against defendant railroad where defendant had no legal right to occupy premises).) In view of these holdings and the language of section 6—119, plaintiff's ejectment action was properly brought even though he did not acquire an interest in the property until after defendant's original entry.

Defendant's second argument is that judgment was improperly entered for plaintiff because plaintiff failed to contradict defendant's assertion that the sewer was lawfully placed on plaintiff's property. Defendant claims that the property owner at the time the sewer was laid consented to its placement because the owner was a construction company which performed the installation work. As defendant correctly notes, an action in ejectment cannot be maintained against an occupant lawfully in possession of a premises. (*Miller v. Frederick's Brewing Co.* (1950), 405 Ill. 591, 597.) In this case, however, there is no competent proof that defendant's original entry was lawful.

In support of its claim of consent, defendant submitted newspaper articles from 1927 describing the sewer's construction, minutes of a city council meeting, and deposition testimony of the present city manager, but the trial court granted plaintiff's motion *in limine* to bar the use as evidence of the newspaper articles on hearsay grounds.

The minutes of a July 6, 1927, Crystal Lake city council meeting indicate only that a motion was carried "that the Crystal Lake Park District be credited with $800 worth of city water for which the said Crystal Lake Park District shall connect the city storm sewer with the drain now being laid across the Lake Development Co's [*sic*] property to the outlet." While such an entry might be competent evidence that the motion carried, it does not identify who was constructing the sewer, whether the property mentioned is the subject of this litigation, or what arrangements had been made with the property owner. Viewed in this light, the council minutes do not show that the sewer here is rightfully on plaintiff's property. As for the present city manager's deposition testimony that Lakeland Development Company owned the property and installed the sewer itself, this was simply a conclusion based on documents he had reviewed, including those mentioned above. This conclusional testimony thus does not consist of facts admissible in evidence and, therefore, cannot be construed as evidence that the owner, at the time of construction, consented to the sewer's placement. 107 Ill. 2d R. 191(a); *Milwaukee Cheese Co. v. Cornerstone Inn, Inc.* (1986), 142 Ill. App. 3d 840, 843.

■ Although defendant argues that it was plaintiff's burden to show that the original entry was wrongful, defendant's assertions of consent were raised as an affirmative defense. Generally, one pleading an affirmative defense assumes the burden of proof on that matter. (*Paddock v. Glennon* (1964), 32 Ill. 2d 51, 54.) More specifically, when a plaintiff in an ejectment action has shown proof of title, "it devolves upon defendant to introduce evidence to overcome that title and *prima facie* right to possession." (*Old Salem Chautauqua Association v. Illinois District Council of the Assembly of God* (1959), 16 Ill. 2d 470, 476, citing *Shillo v. Martin* (1947), 397 Ill. 211, 216.) Plaintiff's title is not in question here, and defendant has shown no right to possession of plaintiff's property, such as an easement or right-of-way. Since the burden of showing such right is on defendant, ejectment in this case was proper.

Defendant also contends that the trial court improperly granted summary judgment for plaintiff on the trespass claim, invoking the same arguments as it did with respect to the ejectment claim. Defendant argues that plaintiff was not the owner of the property at the time the initial entry was made and that plaintiff has not shown the original entry was unlawful. Once again, defendant's arguments are not convincing.

■ If a trespass is continuing, any person in possession of the land at any time during its continuance may maintain an action for

trespass. (*Lake Shore Building Co. v. City of Chicago* (1917), 207 Ill. App. 244, 247-49.) In *Lake Shore*, as in this case, the defendant constructed a pipeline under the plaintiff's property prior to the plaintiff acquiring title. When the plaintiff acquired title, it brought suit in trespass, and judgment was entered for the plaintiff. The court termed the trespass a continuing one and specifically rejected the argument that the right of action existed only in the owner of the property at the time of the initial entry. (*Lake Shore*, 207 Ill. App. at 247-48.) The *Lake Shore* court's conclusions are supported by the Restatement of Torts. The comments to section 161 of the Restatement provide: "If the possessory interest in the land has been transferred subsequent to the actor's placing of the thing on the land, the transferee of the land may maintain an action for its continuance there." (Restatement (Second) of Torts §161, comment *e* (1965).) Likewise, the comments to section 162 state that "the transferee of the possession has a cause of action for the actor's wrongful continuance of his trespass after the possession of the land was acquired by such transferee." (Restatement (Second) of Torts §162, comment *d* (1965).) Since the sewer here is a continuing trespass (*Lake Shore*, 207 Ill. App. at 247), the fact that plaintiff did not own the property at the time it was first installed does not prohibit his present claim for trespass.

██ ■ Although defendant again argues that plaintiff has not proved the initial entry was unlawful, plaintiff did not have such a burden. As with the ejectment claim, defendant raised the issue of consent as an affirmative defense and once again must bear the burden of proof on the issue. Although not explicitly stated in any Illinois trespass case, the law is that where a defendant relies on a license or consent by a former owner as a defense to an action for continuing trespass, the burden of showing the license or consent is on the defendant. (*Milton v. Puffer* (1911), 207 Mass. 416, 93 N.E. 634; 75 Am. Jur. 2d *Trespass* §79 (1974).) Since defendant has not been able to show that any prior owner consented to the placement of the sewer here, summary judgment for plaintiff on the trespass claim was proper.

Defendant next argues that the trial court erred in granting the writ of *mandamus* compelling defendant to institute eminent domain proceedings. Defendant argues that plaintiff failed to demonstrate a clear right to the remedy because plaintiff did not establish that the sewer effectively destroyed or impaired the usefulness of his land and because, if there was any taking, it was not from plaintiff but from the owner at the time the sewer was installed.

■ There is no question but that property may not be taken for a public purpose without payment of just compensation to the owner thereof. (Ill. Const. 1970, art. I, §15.) Nor can it seriously be argued that placement of a sewer system on private property is not a taking. The test for whether there has been a taking is whether there has been an actual physical invasion of tangible property. (*Horn v. City of Chicago* (1949), 403 Ill. 549, 554.) In this case, the sewer system definitely invades tangible property owned by plaintiff; thus, there has been a taking. Although defendant contends that plaintiff must show damage different in kind than that suffered by all landowners in the vicinity, the case on which defendant relies, *Department of Transportation v. Rasmussen* (1982), 108 Ill. App. 3d 615, was concerned with damages suffered due to loss of access to property, not actual physical invasion of property. *Rasmussen* is clearly inapplicable to the issue at bar.

■ ■ Contrary to defendant's argument that plaintiff has not shown a right to issuance of the writ of *mandamus*, where there has been a taking without just compensation, the owner may bring a *mandamus* action against the responsible agency to compel the institution of eminent domain proceedings. (*People ex rel. Haynes v. Rosenstone* (1959), 16 Ill. 2d 513, 516; *Corn Belt Bank v. Cellini* (1974), 18 Ill. App. 3d 1035, 1039.) The right to bring such action also passes to subsequent purchasers as well. (*Chicago & Iowa R.R. Co. v. Hopkins* (1878), 90 Ill. 316, 321.) In *Hopkins*, the defendant railroad company took possession of a right-of-way without compensating the owner. Hopkins later acquired title and sought compensation for the taking. In rejecting the railroad's claim that Hopkins was not entitled to compensation because the taking occurred prior to his acquisition of an interest in the property, our supreme court stated:

"The company was a mere intruder. It had no easement or right of way, and the purchaser at the judicial sale was not bound to take notice of a right that had no existence in fact. The constitution itself provides, private property shall not be taken or damaged for public use without just compensation, and the act of the corporation in taking and retaining the land was a continuing trespass. The title of [the prior owners] was unincumbered by any right of way in the company, and that title to the whole land, including the so called right of way, passed by the judicial sale and deed to Hopkins. *** The tortious act of the company deprived neither [the prior owners] nor their grantee [Hopkins] of any right, and invested the company with no title or legal possession. Hopkins, after the con-

veyance to him, might have maintained ejectment." *Hopkins*, 90 Ill. at 321-22.

Defendant's argument that plaintiff has shown no taking as to him appears to be another attempt to place the burden on plaintiff of proving that the original owner was not compensated or did not consent to the taking. Defendant has cited no authority for this proposition, and our research has revealed no cases allocating the burden of proof on this issue to either the taking agency or the property owner. We find, however, that considerations similar to those present in ejectment and trespass cases are applicable here as well, *i.e.*, if defendant argues that the original owner consented or was compensated, defendant should bear the burden of proof on the issue. Since no competent evidence of consent or compensation was introduced here, the writ of *mandamus* compelling defendant to institute eminent domain proceedings was correctly issued.

■ Defendant next argues that the trial court erred in granting injunctive relief to plaintiff requiring removal of the sewer because plaintiff's damages are ascertainable and easily remedied at law. In so arguing, defendant attempts to distinguish the case of *Springer v. City of Chicago* (1923), 308 Ill. 356. In *Springer*, the city constructed a sewer beneath the plaintiff's property without first acquiring an interest in the property. In ruling on the property owner's request for injunctive relief, the court stated:

"The [owner] is entitled to recover damages for the trespass or to maintain ejectment for the possession, but he is not limited to these remedies. Injunction is a proper remedy of the owner when an unlawful appropriation of his land is attempted for the use of a public corporation which has not acquired the right of such appropriation by condemnation or otherwise. In such cases courts of equity act upon broader principles than in ordinary cases and have granted equitable relief without regard to the existence of legal remedies, irreparable injury or other equitable considerations. Public corporations vested with the power of eminent domain may be enjoined from the misuse of the sovereign power which has been delegated to them by the legislature when they attempt wrongfully to appropriate private property. [Citations.]

The [owner] is entitled to an injunction against the continuance of the sewer upon his premises and the occupation of any part of them by this improvement without just compensation." (*Springer*, 308 Ill. at 364-65.)

Defendant admits that injunctive relief is a proper remedy for the un-

lawful appropriation of land, but contends that *Springer* is inapplicable here because plaintiff has not shown that the appropriation in this case was unlawful. As noted above, however, such is not plaintiff's burden, but rather defendant must show its right to occupy plaintiff's land.

Defendant also asks this court to consider the rationale of *Hoekstra v. County of Kankakee* (1977), 48 Ill. App. 3d 1059, where a claim for damages by subsequent lessees of property was denied. In *Hoekstra*, however, there was no actual physical invasion by the county or any appropriation of the plaintiffs' property as in this case. The damage there was occasioned by an improvement on adjacent property of which the lessees had notice before they took possession. (*Hoekstra*, 48 Ill. App. 3d at 1062.) Here, there was no notice of the sewer when plaintiff took possession; and, more importantly, plaintiff's property has actually been invaded by defendant. *Springer* is much closer factually than *Hoekstra* and controls our decision here.

■■ It should be noted, however, that the *Springer* court did hold that, to avoid public inconvenience, a reasonable time should be allowed the city to agree with the property owner upon the amount of compensation to be paid or to condemn the property. (*Springer*, 308 Ill. at 365.) Such would also seem appropriate in this case, especially in view of the writ of *mandamus* compelling the city to condemn plaintiff's property. We thus hold that the order granting injunctive relief should be modified so that it will only take effect if defendant does not comply with the writ of *mandamus*.

■■ Defendant's final argument is that plaintiff's claims are precluded by statutes of limitations. Defendant contends that the five-year period set forth in section 13—205 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 13—205) applies to the ejectment, *mandamus* and injunction claims. Defendant maintains that, because plaintiff had knowledge of the sewer as early as 1978, the claims filed in 1985 are barred. Plaintiff responds that the 20-year statute of limitations of section 13—101 of the Code (Ill. Rev. Stat. 1985, ch. 110, par. 13—101) applies. While this issue is not entirely free from doubt, plaintiff's argument appears more persuasive.

Section 13—101 provides:

"No person shall commence an action for the recovery of lands, nor make an entry thereon, unless within 20 years after the right to bring such action or make such entry first accrued, or within 20 years after he, she or those from, by, or under whom he or she claims, have acquired title or possession of the premises." Ill. Rev. Stat. 1985, ch. 110, par. 13—101.

This statute would seem to apply to an ejectment action because, as our supreme court has stated: "The action of ejectment involves the title to land ***. The object is to obtain possession of land." (*Dagit v. Childerson* (1945), 391 Ill. 611, 614.) While defendant contends that the court in *Hawkins v. Elgin* (1955), 4 Ill. App. 2d 102, held that the five-year statute applies to ejectment actions, the exact holding of that case is unclear. It seems, however, that the plaintiff's claim there was barred by *laches* rather than the statute of limitations. It also seems it was plaintiff's claim for damages, not possession, which was barred. Thus, the *Elgin* case is not a sound basis for applying a limitations period other than that applicable to actions for the recovery of real property.

Likewise, the *mandamus* action involves title to real property. This issue was addressed in *Di Santo v. City of Warrenville* (1978), 59 Ill. App. 3d 931, where this court held that plaintiffs there were not barred by the statute of limitations because the 20-year limitations period for adverse possession of real property had not run out at the commencement of the action. (*Di Santo*, 59 Ill. App. 3d at 941.) Although defendant cites *Santucci Construction Co. v. Metropolitan Sanitary District* (1972), 9 Ill. App. 3d 491, for the proposition that the five-year limitations period of section 13—205 applies to all *mandamus* actions, that case involved a party seeking to compel the issuance of bonds for payments due under a contract, not possession of land. *Di Santo* was decided after *Santucci*, and specifically held that the 20-year period applies in cases such as this one; *Di Santo* is therefore controlling. Likewise, plaintiff's claim for injunctive relief, an equitable claim to which statutes of limitations are not usually applicable, also seeks possession of the property presently occupied by defendant and would thus be controlled by the 20-year statute, if any.

■■ ■ As plaintiff notes, application of the five-year statute to his ejectment and *mandamus* claims would lead to absurd results. In order for defendant to acquire an interest in plaintiff's property by adverse possession, defendant must be in open and notorious possession of the property for 20 years. (*Joiner v. Janssen* (1981), 85 Ill. 2d 74, 81.) Under defendant's interpretation of the statute of limitations to be applied to ejectment and *mandamus* claims, however, a property owner's causes of action could be barred after a mere five years. To use plaintiff's terminology, the property would be in a state of limbo for 15 years. While the intruder would have no legal right to occupy the premises during that period, the owner could not eject the intruder. To even consider this possibility is to comprehend its absurdity. Therefore, the 20-year statute should apply to plaintiff's ejectment

and *mandamus* claims. Furthermore, due to the sewer's hidden location, 7½ feet underground, it cannot be said that defendant's presence on the property was open and notorious for more than 20 years before this action was filed. (See *Continental Illinois National Bank & Trust Co. v. Village of Mundelein* (1980), 85 Ill. App. 3d 700, 704.) The burden of establishing the 20-year period rests on the party pleading it (*Poulos v. F. H. Hill Co.* (1948), 401 Ill. 204, 214), and defendant here only argues that plaintiff first learned of the sewer's presence in 1978, well within the 20-year period.

■■■ Plaintiff is also entitled to damages for continuing trespass which accrued within the five-year period prior to the filing of his complaint. In *Lake Shore Building Co. v. City of Chicago* (1917), 207 Ill. App. 244, as discussed above, a similar situation was presented, and the court held that in the case of a continuing trespass which began more than five years prior to filing suit, the statute of limitations does not bar a trespass action entirely, but limits recovery to a period of five years immediately prior to suit. Although defendant cites several cases which hold that suits for damage to real property must be brought within five years of construction of the complained-of structure, none of those cases involved a continuing trespass on the plaintiff's property as here, but pertained to permanent structures built on neighboring land. The trial court did not err in holding that plaintiff's causes of action were not time barred.

■■■ In plaintiff's cross-appeal, he contends that the trial court erred in modifying its order so as to deny plaintiff's fees and costs claimed under section 7—122 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 7—122). That section provides:

> "Where the State of Illinois, a political subdivision of the State or a municipality is required by a court to initiate condemnation proceedings for the actual physical taking of real property, *the court rendering judgment* for the property owner *and awarding just compensation for such taking* shall determine and award or allow to such property owner, *as part of such judgment or award,* such further sums, as will in the opinion of the court, reimburse such property owner for the owner's reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees actually incurred by the property owner in such proceedings." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 110, par. 7—122.)

While plaintiff interprets this section as requiring the trial court to award fees and costs in the *mandamus* action, plaintiff's interpretation is not well supported.

The statute quoted above is contained in the Eminent Domain Act (Ill. Rev. Stat. 1985, ch. 110, par. 7—101 *et seq.*), and the language of the statute indicates that the award of fees is to be made in the eminent domain proceeding. Although plaintiff contends that *Department of Transportation v. Shaw* (1977), 68 Ill. 2d 342, and *Department of Conservation v. Lawless* (1981), 100 Ill. App. 3d 74, hold that fees must be awarded in a *mandamus* action alone, those cases do not so hold. In neither *Shaw* nor *Lawless* was the issue addressed of whether fees and costs should be awarded for the *mandamus* action prior to commencement of eminent domain proceedings. Although those cases do indicate that fees and costs incurred in the *mandamus* proceeding should be awarded in addition to those incurred in the eminent domain proceeding under section 7—122, both of those cases were appeals from actual eminent domain cases. Here, the eminent domain proceedings have not yet taken place, so an award of fees and costs would be premature. The trial court apparently recognized this as its order stated only that fees would not be awarded "at this time." The trial court did not hold that such fees could never be awarded. Thus, the court's holding on this issue is correct.

The portions of the judgment of the circuit court of McHenry County granting summary judgment for plaintiff on the trespass, ejectment and *mandamus* claims, and denying plaintiff's claim for fees and costs are affirmed. The portion of the order granting injunctive relief is modified so as to only take effect if defendant fails to institute eminent domain proceedings as ordered by the writ of *mandamus*.

Affirmed as modified.

INGLIS and NASH, JJ., concur.