(No. 23803.— )

THE ELDRED DRAINAGE AND LEVEE DISTRICT *et al. vs.* R. J. WILCOXSON *et al.* Appellants.—(LIZZIE FARROW, Intervening Petitioner, Appellee.)

*Opinion filed December 10, 1936—Rehearing denied Feb. 5, 1937.*

CRAIG & CRAIG, CRAIG VANMETER, FRED H. KELLY, JAMES W. CRAIG, JR., and WILLIAM G. VOGT, for appellants.

PAUL M. HAMILTON, and GILBERT K. HUTCHENS, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellants seek review of a judgment of the county court of Greene county against their lands lying in Eldred Drainage and Levee District, a corporation, for an assessment to pay a judgment secured by appellee, Lizzie Farrow.

This action arose on the presentation of the assessment roll by the commissioners of said drainage district. Appellants are objectors and shall be so characterized herein. During the hearing on objections, Lizzie Farrow, (hereinafter called the intervenor,) sought, and was permitted, to intervene in the proceeding.

The background of this action, briefly stated, is as follows: On November 8, 1929, Lizzie Farrow obtained a judgment against the Eldred Drainage and Levee District, (hereinafter called the district,) for damage to her lands by reason of certain works of the district. The Appellate Court for the Third District affirmed that judgment. (*Farrow* v. *Eldred Drainage and Levee District,* 268 Ill. App. 432.) This court denied a petition for writ of *certiorari.* On failure or refusal of the commissioners to pay the judgment, Lizzie Farrow sought in the circuit court of Greene county, and was awarded, a writ of *mandamus* compelling them to levy an assessment to pay that judgment. The judgment awarding the writ was affirmed by this court in 359 Ill. 347. Thereafter, pursuant to the order of the circuit court of Greene county, the commissioners filed in the county court of that county a petition for an additional assessment to pay the judgment. The objectors filed objections, which were overruled and the commissioners directed to make up and file an assessment roll. This was done. The objectors then filed objections to the assessment roll. The legal objections were overruled and a hearing was had before a jury. The assessment roll was introduced in evidence and the objectors' witnesses were heard to testify that the assessment would result in no benefit to the property in the district. The jury returned a verdict adopting the figures set out in the assessment roll. The case is here on certain propositions of law, viz.: First, that the petition failed to allege that any benefits would arise from the assessment, and so the approval of it was without authority of law, as there is no law in this State authorizing the spreading of an assessment such as was here attempted; second, that section 37 of the Levee act did not authorize the filing of a petition for additional assessments to pay a judgment for damages against the district; and third, certain errors in rulings on evidence, instructing the jury, and prejudice in arguments of counsel.

In support of their insistance that the assessment was illegally spread, the objectors say that under section, 31 of article 4 of the constitution of this State no such an assessment may be spread unless there is a resulting benefit to the lands, and the lands not being benefited by the payment of the intervenor's judgment, the judgment sustaining this assessment is contrary to that provision of the constitution. Section 31 of article 4 of the constitution is: "The General Assembly may pass laws permitting the owners of lands to construct drains, ditches and levees for agricultural, sanitary or mining purposes, across the lands of others, and provide for the organization of drainage districts and vest the corporate authorities thereof with power to construct and maintain levees, drains and ditches, and to keep in repair all drains, ditches and levees heretofore constructed under the laws of this State by special assessments upon the property benefited thereby."

In support of this constitutional objection the objectors cite numerous decisions of this court. Those cases had to do with the original cost of the improvement, and the opinions rendered call attention to the constitutional provision for the limitation of assessments on lands in a drainage district to the benefits derived by those lands from the improvements constructed by the district. *North Wichert Drainage District* v. *Chamberlain,* 340 Ill. 644, cited by the objectors, was a case where one levee district secured a judgment against another district for benefits to the latter growing out of the former's works. The question arose on objections to the assessment roll. It was in that case said: "It is, of course, true that no land can be assessed for the cost of any improvement more than it is benefited by the improvement and if it is not benefited it cannot be assessed for any amount." This court there referred to the law governing the improvement of the condition of the defendant district by the works of the plaintiff district. The provisions of the Levee act permitting

the recovery of such a judgment limit it, in terms, to the benefits which an adjoining district has received from the works of the plaintiff district. The question presented in that and other cases cited dealt with benefits to land in the formation of drainage districts, and those decisions do not bear directly on the question here, which is whether a drainage district has power, by spreading an assessment over the lands thereof, to collect funds to pay a judgment against it. The provisions of section 31 of article 4 of our constitution do not require, in a case such as this, that the assessment to pay a judgment shall be limited solely to benefits derived. That section relates to the construction, repair and maintenance of the works of the district, the cost of which may be charged against the lands of the district only to the extent such lands are benefited.

There is another provision of our constitution, however, which is applicable here, and that is section 13 of article 2, declaring that "private property shall not be taken or damaged for public use without just compensation." That a drainage district is a municipal corporation with power to condemn property is conceded. That it may not take or damage property without paying just compensation therefor is also the law of this State. (*People* v. *Chicago and Eastern Illinois Railroad Co.* 262 Ill. 492; *Bradbury* v. *Vandalia Drainage District,* 236 id. 36.) The fact that this drainage district damaged the property rights of the intervenor is established by the judgment secured by her against the district for such damage. It appears from this record that the district diverted Bushnell, Hurricane and Schafer creeks, all of which drained the intervenor's land, and changing the course of those creeks sent them through a ditch along the west border of the intervenor's farm. This ditch was inadequate and the lands of the intervenor were damaged by overflow.

This district was created a municipal corporation, with power to sue and be sued. The objectors' lands lie within

that district. If such corporation may be sued, a judgment may be rendered against it for damage arising out of the works of the district by which it appropriated the right of the intervenor to have the waters of Hurricane, Bushnell and Schafer creeks flow down their natural watercourses by closing these water-courses and directing the three creeks through the ditch referred to. Such was the basis of the intervenor's judgment. The intervenor's rights to the natural flow of the waters of these creeks was a property right, and the damage arising out of taking away that right was a property damage committed by the district. Such comes clearly within the constitutional provision requiring just compensation for damaging private property for public use. Such compensation does not mean merely the right to secure a judgment. The constitutional guaranty of just compensation for damage to property rights when taken for public use is not satisfied by the judgment but only by payment of it. (*People* v. *Kelly,* 361 Ill. 54.) When the objectors' lands received the benefits of the drainage district they received the benefit of that which constituted a damage to the intervenor's property, and as the district has no means of raising funds other than by levies against lands lying within it, those lands are chargeable with liability for damage arising from the acts of the district done within its authority. It would be a monstrous doctrine to hold that while the intervenor is entitled to judgment for such damages and the commissioners are compelled to levy an assessment to pay such judgments, yet the intervenor cannot collect that judgment, nor the commissioners collect their assessment to pay it, because, forsooth, the objectors' lands will derive no benefit from the payment of the judgment.

In *North Fork Drainage Comrs.* v. *Rector Drainage District,* 266 Ill. 536, it was held to be the duty of the district to meet its obligations notwithstanding the constitutional inhibition of sections 9 and 10 of article 9 against dele-

gating powers to other than corporate authorities of a municipality to create a debt without the consent of the taxpayers. In the case before us, the fact, if it is a fact, that no benefits will be derived by the objectors' lands from the act of paying the judgment does not prevent contribution by such lands to the payment of that judgment. An obligation of this character against a drainage district is not such as comes within the prohibition of section 10 of article 9 of the constitution referred to, and the objectors' contention in that regard cannot be sustained.

The objectors say, also, that section 37 of the Levee act, under which act this district was organized, gives no authority for the levy of such assessment. It is a sufficient answer to this second contention to say that this court has definitely held on the last preceding appearance of this case in this court that section 37 is by this language broad enough to include assessments of this kind, and further, that in cases where a judgment has been secured against a drainage district it is the duty of the corporate authorities of the district, if no funds are available for that purpose, to levy an assessment against the lands of the district to pay the judgment as in the case of other legal obligations.

There are in the briefs contentions of error in the admission of evidence, examination of witnesses and instructions. These, however, arise out of the theory of the objectors that benefits to their lands must be shown before judgment confirming this assessment roll can be entered. Under the views expressed here those objections lose force. There is no claim that the objectors' lands are required to pay more than their proportionate share of the judgment. We have examined the record, and while some errors were committed by the trial court, there is nothing justifying a reversal of this judgment, and it is affirmed.

*Judgment affirmed.*